**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

DONALD R. BARBE,

        Petitioner,

    v.                                      CIVIL ACTION NO.  5:04CV53
                                                     (Judge Keeley)

THOMAS McBRIDE,
Warden, Mount Olive Correctional Complex,

        Respondent.

## REPORT AND RECOMMENDATION 28 U.S.C. § 2254

## I.  INTRODUCTION

On May 6, 2004, the *pro se* petitioner, Donald R. Barbe, filed a Petition Under 28 U.S.C.

§ 2254 for a Writ of Habeas Corpus by a Person in State Custody.  On July 1, 2004, the petitioner

submitted a letter from the victim which he states supports ground 2 of his § 2254 petition.[1]  On that

same date, he also requested appointment of counsel.

By Order entered on July 12, 2004, the Court ordered the respondent, Thomas McBride, to

answer the petition.  On September 10, 2004, the respondent filed a Consolidated Motion for

Summary Judgment, Motion to Dismiss and Memorandum in Support Thereof.  On November 15,

2004, the petitioner filed Petitioner's Response in Opposition to the Respondent['s] Consolidated

Motion for Summary Judgment, Motion to Dismiss and Memorandum in Support Thereof.  On

November 22, 2004, the respondent filed a reply. On December 2, 2004, the petitioner filed a

---

[1]In the letter,  Jayna Myers stated that when she was 16 years old she went through a "self-destruction phase" and was "drinking and doing drugs very heavily."   During that time, she told her brother that the petitioner had molested her. Her brother told their father who contacted the police. Myers was put into counseling with Ruth Anderson.   Myers states that when she talked to Anderson she "did not think that it would go any further than her and I"  so she "exaggerated and made things up."   Myers also states she talked to a friend of her aunt, but the friend was actually a sheriff. She also states that she was harassed by State Trooper Shelton.  Myers states her male babysitter molested her when she was 6 years old, and she took the details from that molestation and said her grandfather molested her.

Response in Opposition to the Respondent ['s] Second Respondent's Reply.

This matter, which is pending before me for initial review and report and recommendation pursuant to L R Pl P 83.13, is ripe for review.

## II. PROCEDURAL HISTORY

### A. Conviction and Sentence

On December 16, 1999, an Ohio County Circuit Court jury found the petitioner guilty of two counts of first degree sexual assault, two counts of incest, two counts of sexual abuse by a custodian, and two counts of sexual assault in the second degree. By order entered on February 1, 2000, the petitioner was sentenced to consecutive terms of imprisonment of 80-190 years. He is currently incarcerated at the Mount Olive Correctional Complex, in Mount Olive, West Virginia.

### B. Appeal

The petitioner filed a direct appeal from his conviction and sentence and raised the following grounds:

(1) Testimony was allowed by a mental health worker that indicated one of the alleged victims of sexual abuse was molested, yet the Court did not allow evidence that the same alleged victim had also claimed she was molested by someone else, which might have indicated someone other than Donald R. Barbe could have molested the alleged victim. The rape shield act should not have prevented evidence of a victim[']s prior sexual abuse by someone else, after the state "opened the door" and introduced mental health evidence that the victim was in fact molested.

(2) The Court sent the bailiff and deputy to gather and collect notes of witnesses, who had not even testified at trial yet. This unusual act was presented to the jury in a way that cast doubts on the credibility of the potential future witnesses of the Defendant Donald R. Barbe. Donald R. Barbe believes the jury inferred that his witness had done something wrong, and were not honorable because they were making notes to refer to later in their testimony.

(3) Donald R. Barbe's attorney and family were investigated pursuant to Court

Order, during the pre-trial and trial period, simply because witnesses for the State changed their account of events. The Trial Court ordering this type of investigation of Donald Barbe's family and attorney had a chilling effect on those investigated during the trial.

(4)     Donald Barbe contends, it was an error to sentence him to consecutive sentences, considering his age, health, and time relation from the acts which led to his conviction to the date of his sentencing.

On February 6, 2001, the West Virginia Supreme Court of Appeals refused the petition for appeal.

## C.  State Habeas Corpus

On or about February 23, 2001, the petitioner filed a *pro se* petition for writ of habeas corpus in the Circuit Court of Ohio County. On August 3, 2001, the circuit court denied the petition without a hearing finding that the issues raised by the petitioner had been fully and fairly litigated or failed to state a claim upon which relief may be granted. Specifically, the petitioner's first claim was that he was denied effective assistance of counsel because the trial court prevented his counsel from cross-examining a state's witness regarding the victim's prior accusations of molestation. The circuit court found that the petitioner was actually re-litigating an evidentiary question which had already been addressed at trial and on appeal. Thus, the circuit court found the claim was barred under the ground of *res judicata*. However, because the petitioner couched his claim in terms of denial of effective assistance of counsel, the court examined the merits of his ineffective assistance of counsel claim and found that the petitioner's attorney did not act deficiently.

The petitioner's second claim was that the trial court erred in not allowing him to cross-examine a State witness. The circuit court found that this evidentiary issue was raised at trial and in his petition for appeal. Thus, the circuit court found the issue was barred under the ground of

*res judicata* and that the trial court properly exercised its discretion in denying cross-examination based on the victim's prior allegations of sexual abuse.

In his third ground, the petitioner alleged that the trial court erred in allowing a witness to testify as an expert. The circuit court found this issue was barred under the ground of *res judicata.*

With regard to the petitioner's fourth ground, the circuit court found that it was "an expression of dislike for one of the witnesses, Joyce Kalkreuth, which testified at his trial." The circuit court found that this ground does not present a claim of error on which relief may be granted.     In his last claim, the petitioner challenged the length of his sentence. The circuit court found the ground was barred by *res judicata*.

The petitioner then filed a petition for appeal with the West Virginia Supreme Court of Appeals and raised the following grounds:

(1)     The decision by the Ohio County Circuit Court was clearly erroneous when the Honorable Judge Arthur Recht denied the petitioner's habeas corpus petition based upon the principle of res judicata based upon the theory the same issues were presented to the state supreme court on direct appeal. This action by the Circuit Court is contrary to and unreasonable application of clearly established United States precedent setting law and violates Petitioner's right under Due Process of Law in accordance to the Fifth and Fourteenth Amendments to the United States Constitution, and violates Article III, Section 10 and 14 of the West Virginia Constitution.

(2)     The decision by the Ohio County Circuit Judge was clearly erroneous when the Honorable Judge Arthur Recht denied the petitioner's habeas corpus petition without a full evidentiary hearing. This action by the circuit court is contrary to and unreasonable application of clearly established United States precedent settings law and violates Petitioner's right under Due Process of Law in accordance to the Fifth and Fourteenth Amendments to the United States Constitution, and violates Article III, Section 10 and 14 of the West Virginia Constitution.

(3)     The petitioner was denied ineffective assistance of counsel which was

so damaging, before and during trial. The state open the door concerning the alleged victim['s] prior allegations of molestation by someone other than the petitioner. This was contrary to and unreasonable application of clearly established United States precedent setting law and violates Petitioner's right under Due Process of Law in accordance to the Fifth and Fourteenth Amendments to the United States Constitution, and violates Article III, Section 10 and 14 of the West Virginia Constitution.

(4)    The court violated petitioner['s] rights in using an erroneous standard in denying the petitioner trial counsel to cross examine the state['s] witness after the state opened the door concerning the alleged victim['s] prior allegations of molestation by someone other than the petitioner. This is contrary to and unreasonable application of clearly established United States precedent setting law and violates Petitioner's right under Due Process of Law in accordance to the Fifth and Fourteenth Amendments to the United States Constitution, and violates Article III, Section 10 and 14 of the West Virginia Constitution.

(5)    The court violated petitioner['s] rights to a fair trial and by using an erroneous standard in allowing a witness to be considered as an expert witness who had no history or prior teaching or at best very limited of such knowledge of such testimony. Counselor Ruth Anderson by being an implant by the State as an expert witness denied the petitioner a fair trial which is clearly contrary to and an unreasonable application of clearly established United States precedent settings law and violates Petitioner's right under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and violates Article III, Section 10 and 14 of the West Virginia Constitution.

(6)    The court violated the petitioner's rights to a fair trial when the trial judge and the prosecutor was speaking to a potential witness without the petitioner['s] trial counsel being present, which this person was known to harass the petitioner and would not stop at any point to frame the petitioner. This is clearly contrary to and an unreasonable application of clearly established United States, precedent settings law and violates Petitioner's right under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and violates Article III, Section 10 and 14 of the West Virginia Constitution.

(7)    The Petitioner maintains his sentence of eighty to one hundred and ninety years violates his proportionality principals to which the statue in which he is convicted under overlaps each other and using same

alleged evidence, testimony violates petitioner's rights to double jeopardy, and amounts to cruel and unusual punishment. This is clearly contrary to and an unreasonable application of clearly established United States, precedent settings law and violates Petitioner's right under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and violates Article III, Section 10 and 14 of the West Virginia Constitution.

By Order entered on January 24, 2002, the West Virginia Supreme Court of Appeals granted the appeal, but issued a rule directing the respondent to produce the petitioner to the Circuit Court of Ohio County, setting the matter for hearing and directing that counsel be appointed for the petitioner. The petitioner filed an amended petition for habeas corpus in which he raised the same grounds he had previously raised on direct appeal and added a claim of ineffective assistance of counsel. The circuit court appointed counsel and held an evidentiary hearing. By Order entered on April 8, 2003, the petition was denied.[2] He then filed a petition for appeal in which he raised the same issues he raised on direct appeal and in his habeas petition. On February 11, 2004, the West Virginia Supreme Court refused the petition for appeal.

## D. Federal Habeas Corpus

### Petitioner's Contentions

(1)    The petitioner was denied his constitutional right to confrontation when the Court prohibited introduction of evidence under the rape shield statute of prior sexual contact the victim had with others to rebut expert testimony that the victim fit the profile of an abused child without considering its admissibility pursuant to Rule 404(a)(3) of the West Virginia Rules of Civil Procedure and the Sixth Amendment of the United States Constitution.

---

[2]The circuit court stated as follows in its page and a half Memorandum of Opinion and Order: After a through review of the Petition and the underlying criminal matters, this Court is of the opinion that the Petition is without merit, and further is not deserving of a hearing under Losh v. McKenzie, 277 S.E. 2d 606, 166 W.Va. 762 (1981).

Accordingly, the relief sought in the Petition for Writ of Habeas Corpus is hereby denied.

(2)     Petitioner was denied ineffective [sic] assistance of counsel in direct violation of Sixth Amendment to Both Federal and State Constitution.

(3)     It was error to sentence the petitioner to consecutive sentences considering his age, health, and the remote time from the acts which led to his conviction.

(4)     The Court sent the bailiff and deputy to gather and collect notes of witnesses who had not even testified at trial, yet. This unusual act was presented to the jury in a way that cast doubts on the credibility of the potential witnesses of the petitioner.

(5)     The Petitioner's Attorney and family were investigated pursuant to court order during pretrial and trial simply because witnesses for the state changed their account of events. The trial ordering this type of investigation had a chilling effect on those investigated during the trial.

(6)     The petitioner viewed the prosecutor and a potential state witness leaving the Judge's chambers before a pretrial hearing.  The petitioner claims that this was done in error.

## Respondent's Contentions

(1)     The petitioner has exhausted his state judicial remedies.

(2)     The petitioner's rights to cross-examine victim testimony was not violated by the "Rape Shield" Law.

(3)     Trial counsel's failure to secure an expert to refute a prosecution expert was not ineffective assistance of counsel.

(4)     Trial counsel's decision not to request a limiting instruction on 404(b) testimony was a matter of trial strategy.

(5)     Trial counsel's trial preparation was not ineffective.

(6)     The petitioner's sentence was not excessive.

(7)     The bailiff's action did not influence the jury.

(8)     Any pre-trial investigation of the petitioner's family was irrelevant to the trial proceedings and harmless.

(9)     Ground six is insufficiently pled to raise a constitutional issue.

### III.  ANALYSIS

**A.  Standard of Review**

#### 1.  Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations.  Walker v. True, 399 F. 3d 315 (4th Cir. 2005).  Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S.41,  45-46 (1957).

Additionally, a district court should construe pro se petitions liberally.  See    Haines v. Kerner, 404 U.S. 519, 520 (1972).  See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (emphasizing the liberal construction rule for pro se complaints raising civil rights issues).

#### 2.  Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80, (1977).  So too has the Fourth Circuit Court of Appeals.  See Maynard v. Dixon, 943 F. 2d 407 (4th Cir. 1991).

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).

Motions for summary judgment impose a difficult standard on the moving party; for, it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990).

However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper.

### 3.  28 U.S.C. § 2254

28 U.S.C. §2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the State court proceeding.

28 U.S.C. §2254(d)(1) and (2); see also Williams  v.  Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir.1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently  reviews the record and clearly established Supreme Court law.  Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001) (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)).  However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."

Williams, 529 U.S. at 413. "If there is no directly controlling Supreme Court precedent for purposes of conducting the 'contrary to' prong, [the court ] must analyze whether the precedent is applied in an objectively reasonable manner." Quinn v. Haynes, 234 F. 3d 837, 844 (4th Cir. 2000) (citing Williams, 529 U.S. 362 (2000)). A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.' 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F. 3d 309 (4th Cir. 2004).[3] "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, supra.

_____

[3]In Sherman v. Smith, 89 F. 3d 1134, 1137-38 (4th Cir. 1996), the Fourth Circuit Court of Appeals set forth a variety of constitutional errors which are subject to the harmless error analysis. The Fourth Circuit also noted that certain structural errors "are so severe as to render a trial inherently unfair and thus, would not be subject to the harmless error analysis." Id.

In the instant case, the undersigned finds that the state court decisions are adjudications of the petitioner's claims, and that the petitioner fails to demonstrate that the state court arrived at a conclusion that is contrary to or an unreasonable application of federal law. Further, he fails to prove that the state court unreasonably determined the facts when analyzing his claims. For these reasons, the petitioner has not established that he is entitled to relief pursuant to 28 U.S.C. § 2254. Consequently, the respondent's motion to dismiss and motion for summary judgment should be granted and the petitioner's § 2254 petition dismissed.

## B.  Denial of Right to Confrontation

During the petitioner's trial, Ruth Anderson, the State's expert, testified that Jayna Myers exhibited symptoms consistent with someone that had been sexually abused as a child.[4]  When defense counsel attempted to question Anderson about whether Jayna Myers had advised her that she had been abused by someone other than the petitioner, the State objected.  A bench conference was held and the following discussion occurred:

> THE COURT: Now, you are getting --you are getting fairly close to the rape shield under this scenario.  I don't know if you want to argue it.  We'll let the jury go in, and we'll discuss it.  That's  where you are going, and we need to take a look at it and see what you believe the law will be on that area.
>
> MR. ALBERTY: Your Honor --
>
> THE COURT: I'll be happy to hear you on it.
>
> MR. ALBERTY: I wasn't sure Mr. Smith was going to open the door where he did.  I didn't have time to research it.  My problem is that Mr. Barbe is informing me she filed sexual rape charges or assault charges in the State of Florida; that the person who supposedly perpetrated this is out or unable to be located. So those charges are still pending.  I don't know. I don't have the resources to --

---

[4]The petitioner asserts he is innocent of sexually abusing Jayna Myers and that she exhibited symptoms consistent with someone who had been sexually abused because she had been abused when she was 5 years old while living in Florida.

THE COURT: I have no idea what you are talking about.

MR. ALBERTY: I'm talking about Jayna Myers filing charges against someone who apparently lived with her father.

THE COURT: Okay. Well, I'm saying this is too much to take up in front of the jury. I'm not going to do that. I'll be happy to hear you on it. But you're coming very close to the area that is precluded under the rape shield statute. The rape shield statute, as you know, goes to more than just rape; it goes to any sexual --

MR. ALBERTY: I'm asking to be heard on it. Unfortunately, Your Honor, I feel that, in light of what this witness has said, if this information can come out, I don't think -- I don't feel my client can get a fair trial.

THE COURT: I'll let you make a record on it. This is the one time that a bench conference was proper.

* * *

THE COURT: You are now getting into an area where you want to probe allegations of other acts of sexual misconduct relating to Jayne Myers other than those involving the defendant; is that right?

MR. ALBERTY: That's correct, Your Honor. Your Honor --

THE COURT: Yes.

MR. ALBERTY: --may we sequester this witness until we go through this?

THE COURT: All right....

THE COURT: The way I view this is that this, this statement -- and although maybe I should hear from you first, Mr. Smith. But every time I get into this area, I get a little bit nervous in terms of attempting to introduce evidence of other acts of sexual misconduct that can be --that are precluded under the rape shield clause.

   Now, what is the basis of your objection? Let me just hear you to make sure we are all on the same page.

MR. SMITH: I do object on the basis of the rape shield statute, specifically 61-8b-11.[5] And also based on the current case law which is State versus Quinn, which has

---

[5]This statute provides as follows:
(a) In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible. In

drastically tightened the rules regarding the introduction of past sexual conduct on the part of victims.

And, under the law, I don't think that counsel can inquire as to this witness as to any other sexual abuse of Jayna Myers she may know about other than those involving the defendant.

THE COURT: Unless, what?

MR. SMITH: Unless the defendant can show a strong probability that this other accusation Jayna may have made was false.

THE COURT: That's right. That's good.  I'll give you an A on that.

MR. SMITH: Thank you, Your Honor.  I don't get many of those anymore.

THE COURT: That's the law that we are dealing with here, and you are right; it's the Quinn case that touches this. There is another case that came after that, Guthrie, that doesn't change it too much.  But I think Quinn still is the -- is the standard.

So, what do you proffer, Mr. Alberty, as to how you will let this in within Syllabus Point 1 of Quinn?

MR. ALBERTY: Well, Your Honor, when I came here, I had no intention of going into this area. Unfortunately, I think Mr. Smith went in there.  And he should have known or does know that he placed us now in an unfair position.

He's asked this woman, this counselor to give her opinion.  She gave

---

any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, That such evidence heard first out of the presence of the jury is found by the judge to be relevant.

(b) In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto.

(c) In any prosecution under this article, neither age nor mental capacity of the victim shall preclude the victim from testifying.

(d) At any stage of the proceedings, in any prosecution under this article, the court may permit a child who is eleven years old or less to use anatomically correct dolls, mannequins or drawings to assist such child in testifying.

her opinion that her client had been sexually abused. I have information that tends to believe and, quite simply, my information comes from Mr. Barbe. I didn't - - I didn't pursue it any further because I didn't think we were going to go here.

Now this woman has made this accusation or this opinion that - - that her client has been sexually abused. I think it's only fair to point out that yes, she's been sexually abused. She filed –my understanding, Your Honor, and again I do not have the resources to go scanning databases to see who is charged, not charged, victims, not victims.

I'm assuming Mr. Smith's witnesses would have told him that.  My understanding is she filed rape or some type of serious sexual charge in the State of Florida with some maintenance man that used to live with her father while she was living with her father in the State of Florida; that this individual bonded out and fled; they are unable to find him; that that case is still pending in the State of Florida.

I also believe she filed some type of allegation very similar  –I'm sorry, I misspoke; she did not file it.  She made allegations very similar that some food manager or worker at a local restaurant in the tri-state area also fondled and attacked her.

Your Honor, I think that certainly would confuse this witness to the point where her opinion  - - would be useless.  She's made this opinion, the jury's heard it.  And, unfortunately, I don't think my client can get a fair trial unless the jury now hears that yes, of course, she exhibits these problems because they came or could have just as easily come from these other allegations she's made against people.

And I do believe I have witnesses in the hallway, if Your Honor wants to hear them, who - - like her mother, who will verify that she's made these allegations. I personally have no knowledge of it and did not investigate it because I am aware of these - - the – rape shield acts as well as - -

THE COURT: If you're aware of the rape shield act, the whole - - what Mr. Smith is saying is that - - is that you have to be aware of Quinn.

And the burden is on you in a Quinn analysis to establish by strong and substantial proof - - I don't know where that stands in the scheme of things anymore; if that's more or less than reasonable doubt; strong and substantial proof, whatever that means - - of the actually falsity of the statements.

MR. ALBERTY: Your Honor, her statements - -

THE COURT: So that's what - - yeah.

MR. ALBERTY: Your Honor, her opinion would have to be false, the conclusions she's drawn, that it has to be Mr. Barbe because - -

THE COURT: No, no, no, no, no, no, no.  This other statement that she's made

regarding this other individual, that's what you are attempting to get in. You're attempting to get in that she made false accusations.

MR. ALBERTY: No, I'm not. I'm attempting to get in these accusations occurred, and that's why she exhibits the psychological profile - -

THE COURT: You're not saying they're false.

MR. ALBERTY: No.

THE COURT: Then they can't come in at all. That's easy. I'm sorry. I thought that you were - - I thought you were suggesting that these were false, similar to what was done here, for example, she did once before. And that could be. That's an exception under the Quinn case. I thought you were right on target there. But no, no, no, no.

MR. ALBERTY: But, Your Honor - -

THE COURT: That's clear. All right.

\* \* \*

MR. ALBERTY: May I speak on a different angle, Your Honor?

THE COURT: Okay, sure.

MR. ALBERTY: Then I would ask that this witness be disallowed because the rape shield case never anticipated us being gagged while a woman says that a victim exhibits all the classic signs of being sexually abused. It's only fair.

THE COURT: Mr. Alberty, I would suggest that you read all the literature on the rape shield statute, and you will find that you're absolutely 100 percent wrong. That's the whole idea of why we have the rape shield statutes.
(Resp.'t Ex. 9 pp. 53-61).

Thus, Judge Recht sustained the objection based on the West Virginia Rape Shield law because the defendant did not allege that the victim's prior allegations were false.

The petitioner alleges the trial court's limitation of his questioning of Anderson denied him his right to confrontation as guaranteed by the Sixth Amendment.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a

criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI.

The right of confrontation "means more than being allowed to confront the witness physically."

Davis v. Alaska, 415 U.S. 308 (1974). In fact, the Supreme Court has noted that "'[t]he main and

essential purpose of confrontation is to secure for the opponent the opportunity of

cross-examination.'" Id. at 315-316 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)).

"The Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity

to probe and expose these infirmities through cross-examination, thereby calling to the attention of

the factfinder the reasons for giving scant weight to the witness' testimony." Delaware v. Fensterer,

474 U.S. 15, 22 (1985). The trial court has the discretion to limit the scope of cross-examination

"based on concerns about, among other things, harassment, prejudice, confusion of issues, the

witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van

Arsdall, 475 U.S. 673, 679 (1986). Thus, the Confrontation Clause, "guarantees an opportunity for

cross-examination, not cross-examination that is effective in whatever way, and to whatever extent,

the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

While the United States Supreme Court has recognized that a state has a valid interest in

protecting victims of sexual abuse from "surprise, humiliation and unnecessary invasions of

privacy." Michigan v. Lucas, 500 U.S. 145, 150 (1991). However, "[r]estrictions on a criminal

defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or

disproportionate to the purposes they are designed to serve.'" Id. at 151.

When a Confrontation Clause error is raised in a federal habeas corpus petition, it is subject

to the harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673 (1986). "On habeas review

a trial error can be reversed only if the error had a substantial and injurious effect or influence in

determining the jury's verdict." Satcher v. Pruett, 126 F.3d 561, 567 (4th Cir.1997) (quoting Brecht v. Abrahamson, 507 U.S. 619, 635 (1993)). The habeas court must conduct a *de novo* examination of the trial record. Id.

This Court is not to determine whether the trial court's determination to limit the cross-examination of Anderson was correct or incorrect, only to determine whether the decision was contrary to or an unreasonable determination of federal law as determined by the United States Supreme Court.

Relying on State v. Quinn, 490 S.E. 2d 34 (W. Va. 1997), the trial court limited the cross-examination because the petitioner was not attempting to show that the victim's allegations were false. In Quinn, the defendant wanted to attack the sexual assault victim's general credibility by attacking her allegations of sexual abuse against two of her step-brothers and her grandfather. The defendant was given an opportunity to show that the victim's prior allegations were false, but his evidence only established that the victim had made the allegations to several different individuals and never recanted the allegations or admitted their untruth. Thus, under the Rape Shield Law, the trial court denied the defendant's attempt to present the impeachment evidence because he failed to provide sufficient evidence of falsity. The West Virginia Supreme Court affirmed Quinn's conviction and held that a victim's prior accusations of sexual abuse which were not shown to be false are within the scope of the rape shield law.

Eventually, Quinn filed a § 2254 petition with this Court which was denied. On appeal, the Fourth Circuit stated that there was no Supreme Court precedent which provides a governing legal principle for Quinn's case. Thus, it examined whether West Virginia's limitation, pursuant to the Rape Shield law, of his proposed impeachment evidence relating to the victim's other allegations

of sexual assault, "constituted an unreasonable application of Sixth Amendment precedent." Quinn v. Haynes, 234 F.3d 837, 846 (4th Cir. 2000). The Fourth Circuit, in addressing issues of credibility, held that "[a] true allegation of another sexual assault is completely irrelevant to credibility and offends the clear language of West Virginia's rape shield law. See W. Va.Code § 61-8B-11 (1986), which is why a threshold showing of falsity ultimately is required." Id. at 846 (4th Cir. 2000).

Quinn involved impeaching a witness based upon attacks to general credibility whereas, while not eloquently pled, the petitioner was attempting to question Anderson about the prior allegations of abuse for exculpatory purposes i.e, to show she had symptoms of being abused because she was abused when she was a small child living in Florida.

In order to fall within the parameters of Quinn, the petitioner now alleges that the victim's prior allegations of sexual abuse were false and should have been admitted. However, the petitioner provided no evidence at trial, or now, that Jayna Myer's prior allegations of sexual abuse were false. In fact, the letter from Jayna Myers (Doc. #9 ) indicates she was molested when she was a child. When the petitioner submitted the letter to the Court, he did not state the allegation of prior abuse was false. Further, counsel for the petitioner argued at trial that he was not attempting to show the prior allegations were false. Instead, the petitioner was arguing that Anderson could provide exculpatory evidence if she were allowed to testify of the victim's prior allegations of sexual abuse, i.e., that the victim exhibited signs of sexual abuse because she had been sexually abused by another person while she lived in Florida. Thus, the petitioner's assertion that he is entitled to relief under Quinn is without merit.

In the alternative, the petitioner asserts that he is entitled to habeas relief because he was attempting to elicit testimony of prior abuse for exculpatory purposes. The petitioner cites Tague

v. Richards, 3 F. 3d 1133 (7th Cir. 1993) in support of his position.  Tague was convicted of child molesting.  During his trial, the state had introduced evidence that the victim's hymen had been damaged.  The defense sought to elicit testimony that the victim had been molested previously by her father and such prior molestation could have caused the damage to the victim's hymen.  The trial court prohibited the use of such testimony based on the Indiana Rape Shield Law.  The defendant eventually filed a § 2254 petition in federal district court which was denied.  On appeal, the Seventh Circuit, relying on Michigan v. Lucas, 500 U.S. 145 (1991), examined the effect of the precluded evidence on Tague's Sixth Amendment rights and the state's interests in excluding the evidence. The Seventh Circuit found that "[t]he Indiana trial court's application of that state's rape shield law to exclude evidence indicating that another possible source of the hymenal damage existed significantly hampered Tague's efforts to rebut the inferences the state asked the jury to draw from the direct testimony of Dr. Hibbard." Tague, 3 F. 3d at 1138.  The Court further stated that "[i]n the absence of any testimony of prior sexual experience, the jury would likely presume that hymenal damage to an eleven-year-old girl was the result of the alleged molestation. As a result, the cross-examination of Dr. Hibbard which disclosed that she could not state who caused the condition was of only limited value to Tague." Id.  Thus, the Seventh Circuit  found that the defendant's rights under the confrontation clause had been violated.  However, the Seventh Circuit found the error was harmless and that the petitioner was not entitled to habeas relief.

The undersigned finds that the Supreme Court has not addressed the issue of the use of the rape shield law to limit questioning of a witness as to whether the victim's symptoms of being sexually abused could have been caused by a prior sexual abuse.  Thus, the decisions from the state courts were not contrary to federal law.  Further, the undersigned finds that the state court's findings

were not an unreasonable determination of federal law.

Even if the trial court's limitation of the petitioner's cross-examination of Anderson violated the Confrontation Clause, the petitioner is entitled to habeas relief only if he can show the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

While the excluded testimony could have demonstrated that victim's symptoms of sexual abuse could have been caused by another individual, such limitation of Anderson's testimony did not have a "substantial and injurious effect or influence" on the jury. The fact that the victim had accused another individual of abusing her does not demonstrate that the petitioner did not abuse her. In fact, there was compelling evidence at trial that the petitioner abused Jayna Myers.

Jayna Myers testified at the trial to being abused by the petitioner numerous times over the years. The testimony from the victim was sufficient to support the conviction for the crimes against her. See Loblain v. Dormine, 229 F. 3d 724 726 (8th Cir. 2000); United States v. Gabe, 237 F. 3d 954, 961 (8th Cir. 2001). Consequently, even if the trial court erroneously limited the testimony of Anderson such ruling was harmless.

Lastly, the petitioner asserts that he is entitled to habeas relief because Jayna Myers has recanted her testimony. During the pretrial hearing, the affidavit of Jayna Myers was read in the record. Jayna Myers stated that the petitioner never had any sexual contact with her. He never had oral or vaginal sex with her or engaged in inappropriate touching. However, on October 19, 1999, Jayna recanted the statements she made in her affidavit.[6] Specifically, she testified at trial that she

---

[6] The petitioner states that Jayna Myers recanted her statement after she spoke to her aunt, Joyce Kalkreuth, and the Ohio County Prosecutor.

had recanted her story "because that is my grandfather, and I don't want my family to hurt anymore." (Resp.'t Ex. 9 p. 19). Now, Jayna recants her trial testimony and restates what she stated in her pretrial affidavit.

Despite Jayna Myers continual flip- flopping of stories, the testimony she gave during trial was deemed credible by the jury. She was questioned extensively about the affidavit which she gave defense counsel and explained why she gave the affidavit. Consequently, the undersigned finds that the trial court's limitation of Anderson's testimony was harmless and this claim is without merit.

## C. Ineffective Assistance of Counsel

The petitioner alleges that his counsel was ineffective for failing (1) to obtain the services of an expert witness to rebut the State's expert; (2) adequately defend against improper Rule 404(b) material introduced into evidence and failure to seek limiting instructions; and (3) to adequately prepare for trial by not interviewing and/or calling as witnesses, persons suggested by the petitioner.

Counsel's conduct is measured under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the

defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance.  Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

### 1.  **Failure to Obtain Services of an Expert**

The petitioner asserts that the State called Ruth Anderson, a counselor, who testified that the victim fit the profile of an abused child and was in fact an abused child.  However, defense counsel failed to seek an expert witness for purposes of rebutting Anderson's testimony.

The respondent asserts that "trial counsel's strategy in cross-examination of Ruth Anderson was to attack the testimony of the witness by diverting implication for the crimes away from the Petitioner due to the victim's allegations of prior episodes of abuse by others, not to contradict Anderson's testimony by casting doubt on whether the victim had in fact been sexually abused as a child."

As stated by the United States Supreme Court:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland v. Washington, 466 U.S. at 689-690.

The undersigned finds that the decision whether to call an expert was a matter of trial strategy.  Further, the petitioner has failed to allege that he was prejudiced by his attorney's failure to obtain an expert.  There is nothing in the record which indicates that outcome of his trial would

have been different had his attorney obtained an expert. Thus, this claim is without merit.

### 2. **Failure to Object to Improper Evidence**

The petitioner alleges his attorney failed to adequately defend against improper 404(b) evidence and failed to request a limiting instruction on 404(b) testimony. According to the petitioner, "a plethora of uncharged sexual acts were permitted to be introduced." Specifically, P.D. testified that the petitioner molested her 32 years before trial.[7]

"The failure to seek [a jury] admonition in and of itself does not indicate ineffective assistance of counsel, as it is quite evident that [the defendant's ] counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them as would have happened upon requesting a jury admonition." Stamps v. Rees, 834 F. 2d 1269, 1276 (6th Cir. 1987). Actions taken as part of reasonable trial strategy do not constitute ineffective assistance. See Strickland, 466 U.S. at 689. The undersigned finds that the failure to ask for a limiting instruction was a matter of trial strategy.

Moreover, even if the petitioner's attorney acted unreasonably regarding the 404(b) evidence, he has not demonstrated that there is a "reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." The testimony of the victims of the charged crimes was sufficient to convict the petitioner, even had the statements of P.D. been successfully challenged or a limiting instructive given. Thus, the outcome of the petitioner's trial was not affected by the inaction of his attorney.

### 3. **Trial Preparation**

---

[7]The indictment did not include offenses against P.D. Instead, the indictment included offenses against Sandvik, Jayna Myers and an individual identified as B.H.

In his petition, the petitioner states that his attorney did not have the following information:

A.  Letters sent to Petitioner's neighbors, by the victim's family.

B.  Letters sent to out of state relatives.

C.  Fliers passed out all over Ohio County, during 1996-1997-1998, by the victim's family.

D.  Information concerning molestation in Florida (age 5).

E. Information of a recent accusation of a Restaurant Manager of alleged rape.

F.  Information of two alleged rapes to the victim in Arizona (by the same man).

G. Trial Counsel did not interview Petitioner's family until the night before trial.

The petitioner asserts that his attorney failed to adequately prepare for trial because he did not interview and/or call witnesses, persons suggested by the petitioner.  However, the petitioner does not state who should have been called as witnesses, what their testimony would have demonstrated, or how their testimony would have affected the outcome of his trial.

The petitioner also asserts that his attorney did not call Debbie Lennox, his main witness, to testify.  According to the petitioner, the night the sexual assault was to have occurred, Ms. Lennox spoke to the victim's mother, and knew the petitioner did not take the victim home.  However, the alleged sexual assault occurred on more than one day.

Thus, there is no showing that the petitioner was provided ineffective assistance of counsel and the state court's decision was not contrary to or an unreasonable determination of federal law or an unreasonable determination of the facts.

**D.  <u>Sentence should not have been consecutive</u>**

The petitioner asserts that his sentence constitutes cruel and unusual punishment because he

was 66 years old when he was sentenced, and "he would have to attain the age of one hundred forty-six (146) to become eligible for parole."

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, Furman v. Georgia, 408 U.S. 238 (1972), provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277, 284 (1983) "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences has been exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272 (1980) (life in prison with the possibility of parole for a three time offender whose crimes involved "the fraudulent use of a credit card to obtain $80 worth of goods or services," "passing a forged check in the amount of $28.36" and "obtaining $120.75 by false pretenses" did not violate the Eighth Amendment).

In Solem v. Helm, 463 U.S. 277 (1983), the Supreme Court found that a sentence of life in prison without the possibility of parole for a seventh nonviolent felony violated the Eighth Amendment. The Supreme Court noted that the Eighth Amendment "prohibits . . . sentences that are disproportionate to the crime committed." Id. at 284. The Supreme Court explained that the following three factors may be relevant to determine whether a sentence is so disproportionate that is violates the Eighth Amendment: (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292. The Supreme Court did not overrule Rummel. The Court stated that "Rummel did reject a proportionality challenge to a particular sentence. But since the Rummel Court--like the dissent today--offered no standards for

determining when an Eighth Amendment violation has occurred, it is controlling only in a similar factual situation.   Here the facts are clearly distinguishable.   Whereas <u>Rummel</u> was eligible for a reasonably early parole, Helm, at age 36, was sentenced to life with no possibility of parole."   <u>Id.</u> at 303, n. 32.

Years later, in <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991), the Supreme Court again addressed the proportionality issue in a case involving a defendant who had no prior felony convictions and was convicted of possession of 672 grams of cocaine.   The Supreme Court determined that the defendant's mandatory life sentence without the possibility of parole did not violate the Eighth Amendment. However, the justices disagreed on why the sentence did not violate the Eighth Amendment.  Justice Scalia joined by The Chief Justice found that " the proportionality principle was "an aspect of our death penalty jurisprudence, rather than a generalizable aspect of Eighth Amendment law." <u>Id.</u> at 994.  He would thus have declined to apply gross disproportionality principles except in reviewing capital sentences. <u>Id.</u>  However, Justice Kennedy joined by Justice O'Connor and Justice Souter recognized that "[t]he Eighth Amendment proportionality principle also applies to noncapital sentences." <u>Id.</u> at 997. They  determined that the following principles should be examined to determine whether an Eighth Amendment violation had occurred: "the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors--inform the final one:  The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." <u>Id.</u> at 1001.  Justice Kennedy also found that <u>Solem</u> did not require a comparative analysis "within and between jurisdictions." <u>Id.</u> at 1004-1005. Instead, Justice Kennedy stated "that intrajurisdictional

and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005.

In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court applied the proportionality principles expounded by Justice Kennedy to a non-capital sentence, and affirmed a sentence of 25 years to life under California's three strikes law for the defendant who had been convicted of felony grand theft for stealing golf clubs valued at $1200.00. In Ewing, Justice O'Conner adopted Justice Kennedy's concurrence in Harmelin and found that because Ewing had been previously convicted of four felonies (first degree robbery and three residential burglaries) his sentence was not grossly disproportionate and did not violate the Eighth Amendment. Justice O'Connor stated that the Eighth Amendment does not prevent the California legislature from deciding that protecting the public requires incarcerating individuals who have been convicted of at least one serious or violent crime.

The same day that the Supreme Court decided Ewing, it also decided Lockyer v. Andrade, 538 U.S. 63 (2003), a § 2254 case involving California's three strike law. Andrade stole $150.00 worth of videotapes from two different stores. He was convicted of two felony counts of petty theft with a prior conviction. As a result of his prior criminal history, he was sentenced to two consecutive terms of 25 years to life in prison with the possibility of parole. The California Court of Appeals affirmed Andrade's sentence of two consecutive terms of 25 years to life in prison and found that such sentence did not violate the Eighth Amendment. In Andrade, the Supreme Court recognized that its "precedents in this area have not been a model of clarity" and that "[its] cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality." Id. at 72. Thus, the Supreme Court determined that "the only relevant clearly established law amenable to the

'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.  The Supreme Court determined that the state court's decision was not contrary to or an unreasonable application of Supreme Court law.

The evidence in this case reveals that the petitioner sexually abused several young children over the years. In fact, he sexually abused his own granddaughter on multiple occasions.  In addition to being convicted of sex offenses against his own granddaughter, the petitioner was also convicted of sexual assault in the second degree against an individual called B.H.  The petitioner abused a position of trust as a 4-H leader and a grandfather.   The trial court imposed sentences within the statutory limits. Furthermore, the trial court's decision to make the sentences consecutive instead of concurrent was authorized by statute.  See W. Va.Code § 61-11-21 (1923).  The state court's failure to grant relief on the petitioner's Eighth Amendment was not contrary to or an unreasonable application of federal law.

## E.  Actions of Bailiff did not Influence the Jury

According to the petitioner, the trial court ordered the bailiff to collect notes from all the defense witnesses. The notes were then given to the assistant prosecutor.  The petitioner states this was done in view of the jury and called into doubt the credibility of the defense witnesses as well as "broke down the barriers between the roles of the judge and the prosecution."

During the trial, defense witness, Maureen Lynn Kirkland, the petitioner's daughter, was using note cards during her testimony.  Once the trial court noticed Ms. Kirkland's use of the note cards, the trial court stopped her testimony and called counsel to the bench. The trial court then ordered the jury out of the court room.  The trial court ordered that if a witness was using note cards,

the cards should be is full sight of the courtroom so the jurors would be aware that the witness was using the cards. Further, the trial court ordered that all witnesses be questioned about whether they planned to use note cards during their testimony.  The jury was returned to the court room and the prosecution cross-examined Kirkland regarding her use of note cards and the use of note cards by other family members. The trial court explained to the jury the applicable rule regarding using note cards.  The transcripts do not reveal that the trial court ordered the bailiff to take the note cards from the witnesses.

The petitioner also alleges that the state police was allowed to use notes to refresh his memory, but the same courtesy was not extended to his witnesses.

Rule 612 of the West Virginia Rules of Evidence provides as follows:

**(a) While Testifying.** If, while testifying, a witness uses a writing or object to refresh memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying.

**(b) Before Testifying.** If, before testifying, a witness uses a writing or object to refresh memory for the purpose of testifying and the court in its discretion determines that the interests of justice so require, an adverse party is entitled to have the writing or object produced, if practicable, at the trial, hearing, or deposition in which the witness is testifying.

**(c) Terms and Conditions of Production and Use.** A party entitled to have a writing or object produced under this rule is entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If production of the writing or object at the trial, hearing, or deposition is impracticable, the court may order it made available for inspection. If it is claimed that the writing or object contains matters not related to the subject matter of the testimony, the court shall examine the writing or object in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing or object is not produced, made available for inspection, or delivered pursuant to order under this

rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial

The actions taken by the trial court was within its authority. There is no allegation that the state policeman was attempting to hide his note cards whereas the record indicates that Kirkland was keeping her cards from the jury. Thus, this ground fails to state a claim upon which relief may be granted.

## F. **Pretrial Investigation of Petitioner's Family**

Prior to trial, Jayna Myers gave the petitioner's attorney an affidavit in which she stated the petitioner did not molest her. She then changed her story. After Jayna Myers changed her version of events, the trial judge ordered an investigation of the petitioner's witnesses and attorney.

According to the petitioner, the investigation had a "chilling effect" on his attorney's ability to represent him. The petitioner alleges that his attorney stopped investigating his case and even moved to withdraw from his case. According to the petitioner, because of the Court ordered investigation, his attorney was unable to investigate the fact that in 1996 , Human Services found the abuse charges against the petitioner to be unfounded and that the victim's Aunt Joyce pushed the police investigation.

During the hearing on counsel's motion to withdraw, the petitioner's counsel stated that he had learned that he was a subject of the investigation. According to the petitioner's attorney, he learned from an attorney on the street that she had been questioned with regard to the petitioner's counsel. The petitioner's counsel alleged that the investigation "placed a chilling effect on my zeal to go out and get more affidavits or even allow anybody to come to the office who wants to give me

an affidavit." (Resp.'t Ex. 10 p. 2).

The State asserted the investigation was a "general investigation" and that no particular person was targeted for investigation.

Further, during trial the matter of the investigation was raised, and the court said that it had not ordered an investigation of defense counsel but "ordered an investigation surrounding the preparation of conflicting testimony." (Resp.'t Ex. 8 p. 475).

As succinctly stated by the respondent, "[t]here is nothing in the record which reveals the petitioner's trial counsel was intimidated or harassed to the point where the proceedings against the petitioner were fundamentally unfair." This ground fails to state a claim upon which relief may be granted.

## G. **Ex Parte Communication**

In ground six, the petitioner alleges that he saw "the aunt of a star witness, who was pushing his prosecution, leave the judges' chambers with the assistant prosecution." The petitioner states that "it was after this point the judge showed ultimate contempt for trial counsel because he attempted to investigate the facts surrounding the allegations being made against his client after discovering she had   and he also states the aunt was also with the judge.

Significantly, the petitioner also states in his response (Doc. #17 at p. 58) that at his habeas hearing he testified that he had no information that the aunt and the assistant prosecutor in fact met with the judge.

Thus, the petitioner's allegations of an ex parte communication is unsupported by any facts. Therefore, the petitioner has failed to state a claim and this ground should be dismissed.

# IV.  Request for Hearing

On February 4, 2005, the petitioner submitted a letter to the Court which has been deemed a motion for a hearing. To receive a hearing, the petitioner must (1) allege facts that, if true, would entitle him to relief,[8] (2) overcome 28 U.S.C. § 2254(e)(2)'s limitations on the availability of an evidentiary hearing, and (3) satisfy one of the six factors set forth in Townsend v. Sain, 372 U.S. 293, 312 (1963).[9]  Walker v. True, 401 F. 3d 574, 584 (4th Cir. 2005).

Here, the petitioner is not entitled to an evidentiary hearing because he has not alleged any facts which, if true, would entitle him to relief.

# V.  RECOMMENDATION

It is recommended that the respondent's Motion to Dismiss and Motion for Summary Judgment GRANTED, that the petitioner's motion for evidentiary hearing be DENIED, and that the petitioner's § 2254 petition be DENIED and DISMISSED WITH PREJUDICE because his claims do not warrant habeas relief.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court written objections identifying the portions of the

---

[8]"This standard is analogous to the measure applied when determining the sufficiency of a complaint." Bacon v. Lee,  225 F.3d 470, 490 (4th Cir. 2000).  "In other words, in assessing whether an evidentiary hearing in the district court was mandatory, we must assess the legal sufficiency of that claim, not the truth of the facts underlying that claim.   And, as is the case with motions to dismiss, because only the legal sufficiency of the applicant's claim, and not the facts in support of it, are tested in determining whether a hearing was mandatory, we must assume the truth of all facts alleged." Id.

[9](1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the  habeas applicant a full and fair fact hearing. Townsend, 372 U.S. at 313.

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation.[10]

The Clerk of the Court is directed to mail a copy of this Recommendation to the *pro se* petitioner and to the Attorney General for the State of West Virginia.

Dated: July 25, 2005

/s/ James E. Seibert
**JAMES E. SEIBERT**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).