# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DONALD R. BARBE,

       **Petitioner,**

    **V.**                  **CIVIL ACTION NO.   5:04CV53**
                                   **(Judge Keeley)**

THOMAS McBRIDE,
Warden, Mount Olive Correctional Complex,

       **Respondent.**

## ORDER AFFIRMING REPORT AND RECOMMENDATION AND DISMISSING CASE

On May 6, 2004, pro se petitioner Donald R. Barbe ("Barbe") filed a six(6) count petition pursuant to 28 U.S.C. § 2254 in the Northern District of West Virginia. By Order entered May 11, 2004, the petition was transferred to this Court. On August 11, 2004, Magistrate Judge James E. Seibert ordered the respondent Thomas McBride, Warden of the Mount Olive Correctional Complex, ("McBride") to answer the petition. McBride subsequently filed a consolidated motion to dismiss and motion for summary judgment on September 10, 2004. On July 25, 2005, Magistrate Judge Seibert issued a Report and Recommendation ("Report"), recommending that McBride's motion to dismiss and motion for summary judgment be granted, and that Barbe's petition be dismissed with prejudice. After obtaining an enlargement of time from this Court to object, Barbe timely filed objections to the Magistrate's Report ("Objections") on September 12, 2005. For the following reasons, this Court **AFFIRMS** the Magistrate Judge's Report and **DISMISSES**

**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**

**WITH PREJUDICE** the petition.

## I. BACKGROUND

### A. Procedural History

On December 16, 1999, an Ohio County jury convicted Barbe of two counts of first degree sexual assault, two counts of incest, two counts of sexual abuse by a custodian, and two counts of sexual assault in the second degree. The Ohio County Circuit Court then sentenced Barbe to consecutive terms of imprisonment totalling 80-190 years. Barbe subsequently appealed his conviction and sentence, and on February 6, 2001, the West Virginia Supreme Court of Appeals denied his petition for appeal.

Barbe then filed a <u>pro se</u> petition for writ of habeas corpus in the Circuit Court of Ohio County on or about February 23, 2001. On August 3, 2001, that court denied the petition without a hearing, finding that the issues raised by Barbe had either been fully and fairly litigated or failed to state a claim upon which relief could be granted. Subsequently, Barbe filed a petition for appeal with the West Virginia Supreme Court of Appeals. On January 24, 2002, that court granted Barbe's appeal, but directed McBride to produce Barbe in the Ohio County Circuit Court for a hearing on the matter, and further directed that counsel be appointed to represent Barbe.

-2-

## ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE

After counsel had been appointed and an evidentiary hearing held, the Ohio County Circuit Court, on April 8, 2003, denied the habeas petition. Barbe then filed a petition for appeal which encapsulated the same arguments raised both in his direct appeal and his habeas petition. On February 11, 2004, the West Virginia Supreme Court of Appeals refused the petition for appeal. Barbe then filed the instant federal habeas petition on May 6, 2004.

### B. Report and Recommendation and Objections

In his Report, Magistrate Judge Seibert summarized Barbe's grounds pursuant to his § 2254 petition as follows:

1. The petitioner was denied his constitutional right to confrontation when the Court prohibited introduction of evidence under the rape shield statute of prior sexual contact the victim had with others to rebut expert testimony that the victim fit the profile of an abused child without considering its admissibility pursuant to Rule 404(a)(3) of the West Virginia Rules of Civil Procedure and the Sixth Amendment of the United States Constitution.

2. Petitioner was denied ineffective [sic] assistance of counsel in direct violation of Sixth Amendment to Both Federal and State Constitution.

3. It was error to sentence the petitioner to consecutive sentences considering his age, health, and the remote time from the acts which led to his conviction.

4. The Court sent the bailiff and deputy to gather and collect notes of witnesses who had not even testified at trial, yet. This unusual act was

> presented to the jury in a way that cast doubts on the credibility of the potential witnesses of the petitioner.

5.   The Petitioner's Attorney and family were investigated pursuant to court order during pretrial and trial simply because witnesses for the state changed their account of events. The trial ordering this type of investigation had a chilling effect on those investigated during the trial.

6.   The petitioner viewed the prosecutor and a potential state witness leaving the Judge's chambers before a pretrial hearing. The petitioner claims that this was done in error.
(Report at 6-7.)

After analyzing those grounds, Magistrate Judge Seibert recommended that McBride's motion to dismiss and motion for summary judgment be granted, and that Barbe's § 2254 petition be denied with prejudice. (Report at 33.) Barbe filed objections to the Magistrate's recommendations for grounds one (1) through three (3), and did not object to recommendations made regarding grounds four (4) through six (6). Each of the grounds found in Barbe's habeas petition and his motion for an evidentiary hearing will be analyzed in turn below.

## II. STANDARDS OF REVIEW

As outlined below, this Court is required to review Barbe's petition pursuant to the strictures of 28 U.S.C. § 2254 (1996). Review is not governed by Federal Rule of Civil Procedure 72(b).

Further, district courts are to liberally construe <u>pro</u> <u>se</u>
petitions. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).
Nevertheless, a Court's <u>de</u> <u>novo</u> review of a § 2254 petition is
restricted to those claims actually raised in the petition.
Thus, to the extent Barbe's objections have outlined arguments
for additional claims not presented to the court's in West
Virginia, those claims must be exhausted before they are ripe for
§ 2254 review here.

**A. Motion to Dismiss**

When ruling on a motion to dismiss a claim, a district court
must assume all facts well-pleaded by the petitioner to be true.
<u>Walker v. True</u>, 399 F.3d 315, 319 (4th Cir. 2005)(citing <u>Rouse v.
Lee</u>, 339 F.3d 238, 248 n.8 (4th Cir. 2003)).  Further, a motion
to dismiss for failure to state a claim may only be granted as a
matter of law "if it is clear that no relief could be granted
under any set of facts that could be proved consistent with the
allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

**B. Summary Judgment**

A moving party is entitled to summary judgment "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that

-5-

the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists

"if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. 242, 255 (1986).  Further, In considering a motion

for summary judgment, the court is required to draw reasonable

inferences from the facts in a light most favorable to the

nonmoving party.  <u>Id.</u>  However, "The mere existence of a

scintilla of evidence in support of the [nonmoving party's]

position will be insufficient..." <u>Id.</u> at 252.  Rather, to

withstand such a motion, the nonmoving party must present

evidence from which "a fair-minded jury" could return a favorable

verdict. <u>See</u> <u>Id.</u>

Initially, the moving party has the burden to show an

absence of a genuine issue concerning any material fact.  <u>Adickes</u>

<u>v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970).  Once the moving

party has met its initial burden, the burden shifts to the

nonmoving party to "establish the existence of an element

essential to that party's case, and on which that party will bear

the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477

U.S. 317, 322 (1986).  To discharge this burden, the nonmoving

party cannot rely on its pleadings but instead must have evidence

showing that there is a genuine issue for trial.  Id. at 324.

## C. 28 U.S.C. § 2254 (1996) – Federal Habeas Corpus

Title 28 of the United States Code, Section 2254(a) states:

> ...[A] district court shall entertain an application
> for writ of habeas corpus in behalf of a person in
> custody pursuant to the judgment of a State court only
> on the ground that he is in custody in violation of the
> Constitution or laws or treaties of the United States.

Thus, to state a justiciable claim for federal habeas corpus

relief, that claim must be grounded in federal law.  Further,

Section 2254(b)(1)(A) states:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted unless it appears that ...
> the applicant has exhausted the remedies available in
> the courts of the State...

But even if such exhaustion occurs, a federal court may not grant

habeas corpus relief unless the state court's adjudication of the

claim on its merits:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2)(1996).

For the deferential standard of § 2254(d) to apply to habeas

claims, those claims must be "adjudicated on the merits" by the

<u>**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**</u>

state court. 28 U.S.C. § 2254(d). As determined by the Fourth
Circuit Court of Appeals, "the phrase 'adjudication on the
merits' in section 2254(d) excludes only claims that were not
raised in state court, and not claims that were decided in state
court, albeit in a summary fashion." <u>Thomas v. Taylor</u>, 170 F.3d
466, 475 (4th Cir. 1999). Once state court adjudication of the
claims is established, a petitioner must then show that the
challenged state court decision "was not just 'incorrect or
erroneous,' but 'objectively unreasonable.'" <u>Rompilla v. Beard</u>,
125 S. Ct. 2456, 2475 (2005)(quoting <u>Lockyer v. Andrade</u>, 538 U.S.
63, 75 (2003)).

Further, pursuant to § 2254(e)(1), any factual
determinations made by a state court while adjudicating habeas
claims are "presumed to be correct," and the habeas petitioner
has the burden to rebut such determinations by clear and
convincing evidence. 28 U.S.C. § 2254(e)(1) (1996).

Finally, if the state court before which the habeas petition
was brought did commit error under § 2254, the district court
must then evaluate the significance of that error. Ultimately,
to warrant the grant of habeas relief, the district court must be
convinced that such error had a "substantial and injurious effect
or influence in determining the jury's verdict." <u>Brecht v.</u>

ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE

Abrahamson, 507 U.S. 619, 637 (1993); <u>Fullwood v. Lee</u>, 290 F.3d
663, 679 (4th Cir. 2002). Thus, habeas relief is not warranted
under § 2254 for harmless error committed by state courts.

### III. DISCUSSION

As outlined above, 28 U.S.C. § 2254 guides this Court's
review and analysis of Barbe's petition. Pursuant to those
strictures, Barbe's petition must be denied because his claims
failed to result from decisions contrary to or involving
unreasonable applications of federal law, failed to result from
unreasonable factual determinations, and with regard to his new
<u>ex post facto</u> claims not raised in his petition, failed to
exhaust state remedies.

**A. Exhaustion of State Remedies**

As noted, Barbe directly appealed his conviction and
sentence to the West Virginia Supreme Court of Appeals which
refused to hear his appeal. Barbe's subsequent petition for
state habeas corpus relief was ultimately refused by that court
as well. Thus, this Court **FINDS** that the claims raised in
Barbe's § 2254 petition exhausted the available state remedies as
required by 28 U.S.C. § 2254(b)(1)(A).

**B. Adjudication on the Merits**

Also as noted, the West Virginia Supreme Court of Appeals

granted Barbe's appeal from the Ohio County Circuit Court's
denial of his state habeas corpus petition, and ordered that an
evidentiary hearing be held on the matter. (Report at 6.)  Prior
to that hearing, Barbe amended his state habeas petition to
include an ineffective assistance of counsel claim. Id.
After an evidentiary hearing, the Ohio County Circuit Court again
denied Barbe's petition and the West Virginia Supreme Court of
Appeals refused to hear the case.[1]  While one may argue that the
West Virginia state court system summarily dismissed at least
some of Barbe's claims, those claims were "adjudicated on the
merits" by the state court in the context of § 2254. Thomas, 170
F.3d at 475.  Thus, this Court **FINDS** that those of Barbe's
contentions which do state claims under federal law satisfy the
requirement of state court adjudication found in 28 U.S.C. §
2254(d).

**C. Analysis of Barbe's § 2254 Claims**

    **1. Barbe's Right to Confrontation was Not Denied**

---

[1]The Circuit Court ruled as follows:
> After a through [sic] review of the Petition and
> the underlying criminal matters, this Court is of
> the opinion that the Petition is without merit,
> and further is not deserving of a hearing under
> Losh v. McKenzie, 277 S.E. 2d 606, 166 W.Va. 762
> (1981).

**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ." U.S. Const. amend. VI. "That right, incorporated in the Fourteenth Amendment and therefore available in state proceedings, includes the right to conduct reasonable cross-examination." Olden v. Kentucky, 488 U.S. 227, 231 (1988). Ground one (1) of Barbe's § 2254 petition asserts Barbe was denied his constitutional right to confrontation when the Ohio County Circuit Court in which he was tried limited cross-examination of a prosecution witness by the defense in order to comply with West Virginia's "Rape Shield Statute," W.Va. Code § 61-8B-11. The state trial court, however, did not unreasonably apply that statute in a manner contrary to clearly established federal law because the testimony sought to be elicited was not designed to impugn the motives, expose the bias, or question the reliability of the witness in any way, nor was that testimony so substantial or injurious as to rise above harmless error.

The United States Supreme Court has recognized that "the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness." Davis v. Alaska, 415 U.S. 308, 316 (1974). Further, and in related fashion, prohibiting a defendant from pursuing otherwise acceptable cross-examination designed to

illustrate the bias of the witness or expose facts which could

negatively impact the reliability of a witness's testimony in the

eyes of the jury violates the Confrontation Clause. Deleware v.

Van Arsdall, 475 U.S. 673, 680 (1986). Thus, to paraphrase

Barbe's objections, the substantial limitation of a defendant's

right to cross-examination may have significant impact on the

"integrity of the fact-finding process." (Objections at 6)

(quoting, Berger v. California, 393 U.S. 314, 315 (1969)).

However, the protections of the Sixth Amendment and its

Confrontation Clause are not violated per se by a trial court's

limiting of cross-examination. As stated in Deleware v.

Fensterer, 474 U.S. 15, 20 (1985), the Confrontation Clause

"guarantees an *opportunity* for effective cross-examination, not

cross-examination that is effective in whatever way, and to

whatever extent, the defense might wish." (Emphasis in the

original.) Further, when a federal habeas petition asserts trial

court error on the basis of the Confrontation Clause, the

reviewing court analyzes that error pursuant to the harmless

error standard. Van Arsdall, 475 U.S. at 680. In the context of

federal habeas relief, this harmless error standard is the one

announced in Brecht, that is, "whether the error 'had substantial

and injurious effect or influence in determining the jury's

<u>**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**</u>

verdict.'" 507 U.S. at 637 (quoting <u>Kotteakos v. U.S.</u>, 328 U.S. 750 (1946)).

In this case, the trial judge limited the cross-examination of Ruth Anderson, the prosecution's expert witness, after the prosecution objected that the testimony sought after by the defense was prohibited by the West Virginia rape shield statute.[2]

---

[2]W.Va. Code § 61-8B-11 (1986):

(a) In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, That such evidence heard first out of the presence of the jury is found by the judge to be relevant.

(b) In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto.

(c) In any prosecution under this article, neither age nor mental capacity of the victim shall preclude the victim from testifying.

(d) At any stage of the proceedings, in any prosecution under this article, the court may permit a child who is

**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**

(McBride Motion, Ex. 9 at 53.)   Anderson, a professional

counselor, testified on direct that Jayna Meyers, the victim,

exhibited symptoms consistent with someone who had been sexually

abused as a child.  Id. at 51.  On cross-examination, the defense

asked Anderson whether Jayna Meyers had ever "told [her] about

any other sexual abuse by anybody else?"  Id. at 53.  During a

lengthy bench conference, Barbe's attorney, argued that Jayna

Meyers had been sexually abused by a man in Florida when she was

five years old while living with her father, and that explained

why she exhibited symptoms of a sexually abused child.  Id. at

54.  Counsel, however, proffered no documentary evidence to the

court regarding prior sexual abuse of Jayna Meyers and did not

assert that any prior sexual assault allegations by her were

false.  See Id. 53-63.  Thus, after fully hearing the issue, the

trial court held that State v. Quinn, 490 S.E. 2d 34 (W.Va.

1997), was applicable to the case[3] and that the rape shield

---

eleven years old or less to use anatomically correct dolls,
mannequins or drawings to assist such child in testifying.

[3]The Quinn court held that a victim's prior accusations of
sexual abuse not shown to be false, fall within the ambit of
West Virginia's rape shield statute. 490 S.E.2d at 40 (We
conclude that evidence that the alleged victim has made
statements about being the victim of sexual misconduct,
other than the statements that the alleged victim has made
about the defendant and that are at issue in the state's

-14-

<u>ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE</u>

statute properly applied to limit the cross-examination of
Anderson.

After a thorough review of the relevant trial record,
Barbe's petition and objections, and the Magistrate's Report, and
noting that the West Virginia Supreme Court of Appeals has upheld
the constitutionality of W.Va. Code § 61-8B-11[4], this Court
concludes that the limitation imposed on cross-examination by the
trial court was not unreasonable. There is no indication in the
trial record that the testimony sought to be elicited by the
defense was intended to impeach the credibility of any witness,
(See <u>Davis</u>, 415 U.S. 308), or expose the bias of any witness. <u>See</u>
<u>Van Arsdall</u>, 475 U.S. 673. Further, recognition of Barbe's
alternative argument, that the defense sought testimony from
Anderson on cross-examination for exculpatory purposes and not to
impeach, does not alter the end result of his challenge.

In his habeas petition, Barbe relies on <u>Tague v. Richards</u>, 3
F.3d 1133 (7th Cir. 1993), to support his assertion that because

---

case against the defendant, is evidence of the alleged
victim's "sexual conduct" and is within the scope of West
Virginia's rape shield law, unless the defendant establishes
to the satisfaction of the trial judge outside the presence
of the jury that there is a strong probability that the
alleged victim's other statements are false. (internal
citations omitted.))

[4]<u>See</u> <u>State v. Green</u>, 260 S.E.2d 257 (W.Va 1979).

the defense at trial sought testimony of prior sexual abuse of
Jayna Meyers to exculpate Barbe, his rights under the
Confrontation Clause were violated when the trial court limited
his attorney's cross-examination of Anderson. <u>Tague</u> involved a
defendant who, after conviction for child molestation, brought a
§ 2254 petition arguing his Sixth Amendment right to
confrontation had been violated.  In essence, the court in <u>Tague</u>
prohibited the defense from cross-examining the prosecution's
expert, pursuant to Indiana's rape shield statute, regarding the
possibility that physical signs of the victim's sexual abuse
could have been caused by a prior incident of molestation. <u>Id.</u> at
1138. The Seventh Circuit found such limitation to indeed be a
violation of the Confrontation Clause, but subsequently held that
the error was harmless under <u>Brecht</u>.

     To the extent the facts in the instant case are similar to
those in <u>Tague</u>, this Court is satisfied that the trial court's
limitation of Anderson's cross-examination did not have a
"substantial and injurious effect or influence in determining the
jury's verdict." <u>Brecht</u>, 507 U.S. at 637.  Simply put, Jayna
Meyers's testimony at trial that Barbe had molested her "about a
hundred times or more," was sufficient to support the jury's
verdict.   Thus, this Court **FINDS** any potential error by the state

-16-

court regarding Barbe's Sixth Amendment rights pursuant to the
Confrontation Clause was harmless and beyond the scope of federal
habeas corpus relief under § 2254.

The circuit court's application of W.Va. Code § 61-8B-11 to
limit cross-examination by the defense during Barbe's criminal
trial does not entitle Barbe to federal habeas relief because the
prohibited testimony was not sought to impeach the credibility
nor expose the bias of any witness, nor does its prohibition rise
above harmless error. Accordingly, this Court **AFFIRMS** the
Magistrate's Report, **FINDS** the state court did not sentence Barbe
contrary to nor unreasonably apply clearly established federal
law, and **ORDERS** ground one (1) of the petition **DISMISSED WITH
PREJUDICE.**

### 2. Barbe's Trial Counsel was Not Ineffective

In ground two (2) of his petition, Barbe alleges that his
attorney was "ineffective" for failing to (1) retain an expert
witness to rebut the prosecution's expert witness; (2) defend
against Rule 404(b) evidentiary material without seeking limiting
instructions; and (3) adequately prepare for trial by not
interviewing and calling as witnesses persons suggested by the
petitioner. (See Magistrate's Report at 22.) This Court's review
of Barbe's Sixth Amendment ineffective assistance of counsel

-17-

claim is guided by the conjunctive, two-prong analysis outlined

in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> . . . has two components. First, the defendant must
> show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose
> result is reliable.

In order to satisfy the deficiency requirement, a petitioner

must demonstrate the objective unreasonableness of his attorney's

performance. Id. at 688. Further, "[j]udicial scrutiny of

counsel's performance must be highly deferential." Id. at 689.

Thus, a reviewing court with the benefit of hindsight must not

second-guess those decisions of counsel which, given the totality

of the circumstances at the time of trial, "might be considered

sound trial strategy." Id. (quoting Michel v. State of La., 350

U.S. 91, 101 (1955)).

In order to satisfy the prejudicial effect requirement of

Strickland's two-prong test, "the defendant must show there is a

reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine

<u>**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**</u>

confidence in the outcome." <u>Id.</u> at 694.  Further, <u>Strickland</u>
makes clear that either prong of its test for ineffective
assistance of counsel may be analyzed first, and thus, if no
prejudice is shown by a petitioner, a court need not analyze
counsel's performance. <u>Id.</u> at 697; <u>Fields v. Att'y Gen. of
Maryland</u>, 956 F.2d 1290, 1297 (4th Cir.), <u>cert. denied</u>, 506 U.S.
885 (1992).

       As outlined below, Barbe was not denied effective assistance
of counsel in this case.  Throughout the trial process, his
attorney advocated Barbe's position reasonably and without
prejudice to his client's interests.  In this regard, Barbe's
Sixth Amendment rights were not violated.

### a. Failure to Obtain a Defense Expert

       In this case, the prosecution's expert witness testified
that the victim displayed symptoms of one who had been  sexually
abused as a child. (McBride Motion, Ex.9 at 49.)  Barbe asserts
his attorney was ineffective because he did not obtain an expert
to illustrate that Barbe does not have the characteristics of one
who could sexually abuse a child.  Thus, damning inferences drawn
by the prosecution went unchecked.

       This claim fails to illustrate any unreasonableness on the
part of Barbe's attorney.  As discussed by the Magistrate, the

decision not to obtain the services of an expert at trial was simply a matter of trial strategy. (Magistrate's Report at 23.) Since defense counsel's decision not to obtain an expert was objectively reasonable, there is no need to analyze the prejudicial effect prong of the Strickland test. This Court **AFFIRMS** the Magistrate's recommendation to this portion of Barbe's instant claim and **FINDS** Barbe was not denied the effective assistance of counsel when his attorney chose not to obtain the services of an expert witness.

### b. Failure to Object Under 404(b)

During Barbe's trial, testimony was given by several individuals who were not victims of charged offenses. That testimony related to sexual incidents arising between Barbe and those individuals. Barbe asserts that his attorney failed to adequately defend against such evidence and failed to request limiting instructions pursuant to West Virginia Rule of Evidence 404(b). As such, "a plethora of uncharged sexual acts were permitted to be introduced." (Barbe Petition at 35.)

Barbe's attorney did not object to prosecution witness' testimony of prior, uncharged sexual acts by Barbe, nor did he seek a limiting instruction for such testimony. However, failing to seek a jury admonition is not per se indicative of the

<u>**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**</u>

ineffective assistance of counsel. <u>See</u> <u>Stamps v. Rees</u>, 834 F.2d
1269, 1276 (6th Cir. 1987). Moreover, in the face of legitimate
404(b) evidence, it is within trial counsel's discretion not to
seek a limiting instruction, and thereby avoid drawing undue
attention to such evidence. <u>See</u> <u>Id.</u> Thus, given the volume of
testimony from victims of charged crimes, the nature of those
crimes, and the deferential standard which governs this Court's
review in this case, the decision of Barbe's attorney not to
object to nor seek a limiting instruction with regard to
potential 404(b) testamonial evidence is consistent with a
reasonable application of trial strategy as outlined in
<u>Strickland</u>. This Court, therefore, **AFFIRMS** the Magistrate's
recommendation to this portion of Barbe's instant claim and **FINDS**
Barbe was not denied the effective assistance of counsel when his
attorney chose not to object to nor seek a limiting instruction
with regard to potential 404(b) evidence.

### c. Trial Preparation

In this portion of Barbe's ineffective assistance of counsel
claim, he asserts that his attorney failed to interview or call
as witnesses several people suggested by the petitioner.
Further, in his Objections to the Magistrate's Report, Barbe
claims that his attorney failed to adequately research the law

**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**

and failed to investigate the charges alleged in counts twelve

(12) through seventeen (17) of the indictment against him.  To

begin, Barbe was adjudged Not Guilty by a jury of his peers on

charges twelve (12) through seventeen (17) at trial.  Thus, his

objections in this regard are moot.

In his § 2254 petition, Barbe attempts to illustrate his

attorney's lack of preparation by providing the following list of

items his attorney did not have at trial:

> A.  Letters sent to Petitioner's neighbors, by the victim's
>     family.
> B.  Letters sent to out of state relatives.
> C.  Fliers passed out all over Ohio County, during
>     1996-1997-1998, by the victim's family.
> D.  Information concerning molestation in Florida (age
>     5).
> E.  Information of a recent accusation of a Restaurant
>     Manager of alleged rape.
> F.  Information of two alleged rapes to the victim in
>     Arizona (by the same man).
> G.  Trial Counsel did not interview Petitioner's family
>     until the night before trial.
> (Barbe Petition at 28.)

None of these items individually or collectively indicates

defense counsel's trial preparation was objectively unreasonable.

Nor is it ineffective in the context of the Sixth Amendment for

an attorney to decide what witnesses will appear in the case,

with the exception of a defendant himself.  Thus, this Court

**AFFIRMS** the Magistrate's recommendation as to this portion of

Barbe's instant claim and **FINDS** Barbe was not denied the

effective assistance of counsel by his attorney's preparation for trial.

Defense counsel's representation throughout the trial process was objectively reasonable and was done without prejudicing his client.  Barbe was afforded the effective assistance of counsel in the context of his Sixth Amendment rights.  Accordingly, this Court **AFFIRMS** the Magistrate's Report, **FINDS** the state court did not sentence Barbe contrary to nor unreasonably apply clearly established federal law, and **ORDERS** ground two (2) of the petition **DISMISSED WITH PREJUDICE.**

### 3. Barbe's Consecutive Sentence was Not Cruel and Unusual

Barbe asserts in ground three (3) of his petition, that the consecutive sentence imposed upon him pursuant to his eight (8) count conviction for various sex crimes violated his Eighth Amendment protection from cruel and unusual punishment.  The Eighth Amendment to the Constitution commands: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  Further, these strictures apply to the several states as well as the federal government through incorporation by the Fourteenth Amendment. Furman v. Georgia, 408 U.S. 238, 257 (1972); Hart v. Coiner, 483 F.2d 186, 139 n.3 (4th Cir. 1973). In this case, the 80-190 year consecutive terms of

imprisonment imposed on Barbe by the trial court do not violate his constitutional rights under the Eighth Amendment because Barbe's crimes were separate crimes under West Virginia state law, the State of West Virginia has statutory authority to impose consecutive sentences on those adjudged guilty of Barbe's crimes, and the sentence imposed does not violate the proportionality principle.

### a. Barbe's convictions were not "multiplicitous"

In both his § 2254 petition and his Objections, Barbe asserts that at least some of the counts of which he was convicted were "multiplicitous," and thus subjected him to double jeopardy which was cruel and unusual. (Barbe Petition at 39; See Objections 38-40.)  As outlined below however, both the state court indictment and West Virginia state law indicate that Barbe's convictions were not "multiplicitous."

Barbe was adjudged guilty by a jury of his peers on eight (8) counts of a seventeen (17) count indictment in the Circuit Court of West Virginia for Ohio County on December 16, 1999.  In two (2) counts, he was convicted of sexual assault in the first degree pursuant to W.Va. Code § 61-8B-3 (1991).  These counts were based on "separate . . . incidents." (McBride Motion, Ex.1). In two (2) counts, he was convicted of incest pursuant to W.Va.

-24-

Code § 61-8-12 (1991). These counts, again, were based on
"separate . . . incidents." Id. In two (2) counts, he was
convicted of sexual assault in the second degree pursuant to
W.Va. Code § 61-8B-4 (1991). Once again, these counts were based
on "separate . . . incidents." Id. Finally, in two (2) counts,
Barbe was convicted of sexual abuse by a parent, guardian,
custodian or person in a position of trust to a child . . .
pursuant to W.Va. Code § 61-8D-5 (1998). These counts were based
on "separate . . . incidents." Id. Each of the code sections
under which Barbe was found guilty beyond a reasonable doubt has
at least one different required element and is separate and
distinct. None of these eight (8) counts subjected Barbe to
cruel and unusual punishment by means of double jeopardy.

### b. West Virginia state law allows consecutive sentences

The trial court sentenced Barbe to consecutive terms of
imprisonment for his crimes. W.Va. Code § 61-11-21 (1923)
authorizes the imposition of consecutive sentences when a person
is convicted of two or more offenses. Thus, the imposition of
consecutive terms of imprisonment in Barbe's case is not, in and
of itself, cruel and unusual punishment.

### c. Barbe's convictions were proportionate

In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme

Court noted that the cruel and unusual punishment clause of the
Eighth Amendment "prohibits not only barbaric punishments, but
also sentences that are disproportionate to the crime committed."
Thus, "a criminal sentence must be proportionate to the crime for
which the defendant has been convicted." Id. at 290.  Further, to
determine proportionality, a reviewing court should analyze
objective criteria, including "(i)the gravity of the offense and
the harshness of the penalty; (ii) the sentence imposed on other
criminals in the same jurisdiction; and (iii) the sentences
imposed for commission of the same crime in other jurisdictions."
Id. at 292.

     Having established a standard to guide the proportionality
analysis in Solem, and having recognized the substantial
deference that a reviewing court owes both to the legislature
which determines punishments and the trial courts which apply
them (id. at 290), the Supreme Court refined its application of
that standard in Harmelin v. Michigan, 501 U.S. 957 (1991).  The
defendant in Harmelin had no prior felony convictions and was
sentenced to life imprisonment without the possibility of parole
for possession of 672 grams of cocaine. Id. at 961.  The Supreme
Court concluded that this sentence did not to violate the Eighth
Amendment. Id. at 996.  Justice Kennedy, in a concurrence joined

by Justices O'Connor and Souter, outlined the scope of what constitutes a disproportionate sentence in violation of the Eighth Amendment. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. at 1001, (citing, e.g., Coker v. Georgia, 433 U.S. 584, 592 (1977)).

Further, in the case of Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court recently expounded on its proportionality analysis in the context of 28 U.S.C. § 2254 petitions. In Lockyer, the defendant was sentenced under a California recidivist statute. After direct appeal, he challenged that sentence as unreasonable under federal law. Id. The Supreme Court found the defendant's sentence not to violate the proportionality principle and determined that for the purposes of § 2254 review:

> the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case. Id. at 73.

In this case, a jury convicted Barbe on eight (8) felony counts, all relating to the sexual molestation of minors, one of whom was his granddaughter. Looked at objectively, and without

-27-

<u>**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**</u>

undue moral emphasis, his crimes were serious, and West Virginia
has a legitimate interest to treat them as such.  The West
Virginia Legislature has placed statutory penalties on each of
Barbe's crimes and the Ohio County Circuit Court in which Barbe
was tried applied those penalties.  This Court must give great
deference to those decisions.

Thus, given the jury's findings of guilt beyond a
reasonable doubt, the seriousness of the crimes, and the State of
West Virginia's interest in punishing and deterring those who
commit such crimes, this Court **CONCLUDES** that the 80-190 year
consecutive terms of imprisonment imposed on Barbe were **NOT**
grossly disproportionate to his crimes.

The consecutive sentences imposed on Barbe were not cruel
and unusual because Barbe was convicted by a jury of his peers,
his crimes were statutorily prohibited, consecutive sentencing
was statutorily authorized, and the requirement of proportional
sentencing under the Eighth Amendment of the Constitution was
satisfied.  Accordingly, this Court **AFFIRMS** the Magistrate's
Report, **FINDS** the state court did not sentence Barbe contrary to
nor unreasonably apply clearly established federal law, and
**ORDERS** ground three (3) of the petition **DISMISSED WITH PREJUDICE.**

<u>ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE</u>

### 4. Bailiff's Actions Fail to Raise a Claim

Ground four (4) of Barbe's § 2254 petition asserts that during his criminal trial and in the presence of the jury, the Circuit Court of Ohio County sent a bailiff to remove notes from a potential defense witness prior to her being called. (Barbe Petition at 40). Thus, Barbe contends, the credibility of his witnesses was impermissibly called into question by the court. As the Magistrate's Report succinctly states, however, "[t]he transcripts do not reveal that the trial court ordered the bailiff to take the note cards from the witnesses." (Magistrate's Report at 30.)

During the testimony of defense witness Maureen Lynn Kirkland, the trial judge stopped the proceeding once he noticed Kirkland using note cards. The judge then ordered the jury out of the courtroom and convened a bench conference. Following that conference, the trial judge ordered that if note cards were utilized for any purpose, such as refreshing recollection, those cards should be kept in full sight of the jury. (<u>See</u> Magistrate's Report at 29-30.) The jury returned to the courtroom and the proceedings continued.

Upon review of ground four (4) of Barbe's 28 U.S.C. § 2254 petition, the Magistrate Court recommended dismissal for failure

**ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE**

to state a claim, (Magistrate's Report at 32), and Barbe filed no objections to this recommendation. This Court **AFFIRMS** the Magistrate Court's recommendation, **FINDS** that ground four (4) of the petition fails to state a claim upon which relief can be granted, and **ORDERS** ground four (4) **DISMISSED WITH PREJUDICE.**

### 5. Investigation of Barbe's Family Fails to Raise a Claim

In ground five (5) of his petition, Barbe asserts that an investigation ordered by the Ohio County Circuit Court while his trial was proceeding had "a chilling effect" on those investigated. (Barbe Petition at 40.) The trial court ordered the investigation in the wake of prosecution witness Jayna Myers's fluctuating version of the events in question. Prior to trial Jayna gave Barbe's attorney an affidavit stating that Barbe did not molest her. Subsequently, however, Jayna changed her story and testified in court to multiple instances of molestation. In the wake of this change, the trial court "ordered an investigation surrounding the preparation of conflicting testimony." (McBride Motion, Ex.8 at 475.)

One of those subject to the investigation was Barbe's attorney. Barbe's claim in this regard is rooted in the notion that the investigation of his defense counsel was unfairly prejudicial to the petitioner. In fact, his attorney did file a

-30-

## ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE

motion to withdraw as counsel on November 10, 1999. (McBride

Motion, Ex.10 at 1.)  In the hearing that ensued, defense counsel

stated to the court that the investigation "has placed a chilling

effect on my zeal to go out and get more affidavits or even allow

anybody to come to the office who wants to give me an affidavit."

Id. at 2.

     The circuit court denied defense counsel's motion to

withdraw after emphasizing the "broad direction" of the ordered

investigation. Id. at 7.  The court then reassured Barbe's

counsel by stating, ". . . as far as we are concerned . . . you

have an unfettered, unencumbered ability to represent Mr. Barbe .

. ." Id.  Thus, in denying the motion to withdraw, the trial

judge stated, "I don't think there is sufficient grounds [sic]

within the motion to in any way interfere with [defense

counsel's] ability to represent Mr. Barbe." Id. at 6.

     Upon review of ground five (5) of Barbe's 28 U.S.C. § 2254

petition, the Magistrate Court recommended dismissal for failure

to state a claim. (Magistrate's Report at 32.)  Barbe filed no

objections to this recommendation.  This Court **AFFIRMS** the

Magistrate Court's recommendation, **FINDS** that ground five (5) of

the petition fails to state a claim upon which relief can be

granted, and **ORDERS** ground five (5) **DISMISSED WITH PREJUDICE.**

### 6. Asserted Ex Parte Contact Fails to Raise a Claim

Ground Six (6) of Barbe's § 2254 petition follows en toto:

> The petitioner testified at the habeas hearing that he
> saw the aunt of the star witness, who was pushing his
> prosecution, leave the judge's chambers with the
> assistant prosecutor prior to a pretrial hearing.  On
> cross examination, he testified that he had no
> information as to whether they met with the judge.  The
> prosecutor called no witness to rebut.
> (Barbe Petition at 41.)

Upon review of ground six (6) of Barbe's 28 U.S.C. § 2254
petition, the Magistrate Court recommended dismissal for failure
to state a claim, (Report at 32), and Barbe filed no objections
to this recommendation.  This Court **AFFIRMS** the Magistrate
Court's recommendation, **FINDS** that ground six (6) of the petition
fails to state a claim upon which relief can be granted, and
**ORDERS** ground six (6) **DISMISSED WITH PREJUDICE.**

### IV. NEW EX POST FACTO CLAIMS NOT EXHAUSTED

In his "Objections to the Report and Recommendation of the
U.S. Magistrate," Barbe raises several claims based on the
asserted ex post facto application of various West Virginia code
sections[5] to the sentence he received following his conviction by
the Ohio County Circuit Court. (See Objections at 5, 14-16, 38-

---

[5]     W.Va. Code § 61-8B-3; W.Va. Code § 61-8-12(c);
        W.Va. Code § 61-8B-4; W.Va. Code § 61-8D-5

ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE

43.) An ex post facto law is one which imposes a punishment for
an act which was not punishable when it was committed, or imposes
additional punishment, or changes the rules of evidence, by which
less or different testimony is sufficient to convict. See Calder
v. Bull, 3 U.S. 386, 390 (1798). To the extent Barbe asserts
claims under the ex post facto clause of the Constitution in his
Objections, those claims were not reviewed in state court and are
not exhausted. Thus, those claims are not ripe for this Court's
review of the instant § 2254 petition.

### V. CONCLUSION

For the reasons outlined above, petitioner Donald R. Barbe's
petition for federal habeas corpus relief under 28 U.S.C. § 2254
is **DENIED** and **DISMISSED WITH PREJUDICE**. Conversely, respondent
Thomas McBride's consolidated motion to dismiss and motion for
summary judgment is **GRANTED**. In accord with this finding,
Barbe's February 4, 2005 motion for an evidentiary hearing is
**DENIED**. It is so **ORDERED**.

## ORDER AFFIRMING REPORT & RECOMMENDATION AND DISMISSING CASE

The Clerk is directed to mail a copy of this Order to the pro se petitioner, counsel of record, and all appropriate agencies.

DATED: September _____*28*_____, 2005

*Irene M. Keeley*

IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE